UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

EDE WARNER, JR.,                                                                       Plaintiff,

v.                                                                    Civil Action No. 3:16-cv-422-DJH

MATT BEVIN *et al.*,                                                  Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Ede Warner, Jr.,[1] filed the instant *pro se* civil action proceeding *in forma pauperis*. This matter is now before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Upon initial screening of the complaint, the instant action will be dismissed for the reasons that follow.

**I.**

Plaintiff originally filed this action in the United States District Court for the Southern District of Indiana, but that court transferred the case here. Plaintiff names the following Defendants: Governor Matt Bevin; University of Louisville (UL) President James Ramsey; UL officials or employees Leslie Strohm, Angela Koshewa, Sam Connally, Malinda Durbin, and Shirley Willihnganz; the UL Board of Trustees; Jefferson County Attorney Mike O'Connell; "Jefferson County Kentucky Attorney's Office, Child Support Division"; Jacob Payne, whom he identifies as employed by the "PageOne Kentucky; Ville Voice"; and the "Louisville Branch of the Equal Employment Opportunity Commission."

---

[1] The complaint also named Greater Decisions Consulting, LLC, as a Plaintiff. However, Greater Decisions Consulting, LLC, was dismissed as a party to this action by separate Order.

As his statement of the claim, Plaintiff states that after receiving tenure as a professor at UL, in 2000, he "was invited to create a University Diversity Initiative." Plaintiff states, "In 2006, 2009, and 2011, I was involved in three personal and professional conflicts against several current and former students, staff, and faculty, all were Black." He states, "However, the retaliation system that was directed by Angela Koshewa, the University Counsel, and clearly involved Human Resources, Malinda Durbin and Sam Connally, as well as others as ordered, chose to participate in all of these events until I was separated in a way that breached the University's contractual obligations regarding my professional career."

Plaintiff then makes reference to an August 2015 Kentucky Supreme Court case which he states ruled in favor of Mary Banker in a suit against UL. He states, "The case establishes a system of retaliation existed between the Legal Department and Human Resources as early as 2008. This proves as material fact a retaliation system existed at UofL run by University Counsel and involving Human Resources." Plaintiff also states, "In February 2015, fired Human Resources Vice President, Sam Connally files a retaliation lawsuit against the University of Louisville." According to Plaintiff, the lawsuit claimed that Connally was the target of retaliation in October 2014 for filing a grievance against the Provost "in part for condoning that the Legal Department lied to the Equal Employment Opportunity Commission in an attempt to overturn a 2012 race discrimination finding by Human Resources against the Financial Aid Office." Plaintiff states, "As VP for Human Resources, Connally would have insider knowledge of the existence of a retaliation system, whether his allegations were true, ie., whether he was the target or not."

Plaintiff further states as follows:

> This action addresses three different aspects of this conspiracy: in the beginning, a conspiracy inside the University of Louisville using a retaliation system to

breach the covenant of good faith and fair dealing and breach tenure, intellectual property, and academic freedom contractual obligations that started among members within UofL and was all racially-motivated; second, beginning in 2009 with my press conference after my arrest, the conspiracy grew to agents outside the University, specifically, the Jefferson County Attorney's office directed by Mike O'Connell, the Louisville Branch of the Equal Employment Opportunity Commission, Jacob Payne, and many others, some that I can't prove yet, both inside and outside Kentucky; third, and finally, agents engaging in a racially motivated Section 1983 conspiracy by using an illegal legal strategy to create strategic flexibility regarding the entire cover-up by President James Ramsey, University Attorney's Angela Koshewa and Leslie Strohm, and Governor Matt Bevin[].

Plaintiff describes Count 1 as "[a] UofL Conspiracy to engage in and cover-up a Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing in my 2011 Separation Agreement that was Racially Motivated." Plaintiff recounts what he describes as racially-motivated actions taken against him by UL officials dating back to 2006. He states that he was arrested in 2009 and that the prosecutor worked with UL "to assure a conviction without a trial, since they were lacking evidence . . . ." Plaintiff states that he ultimately pleaded guilty to the charges out of "fear." He reports that he "filed a racial discriminatory harassment complaint against several University officials, including the University counsel." He states that the complaint "alleged that after my arrest on July 6, 2009, University officials engaged in a series of acts of harassment and violation of University policy, in addition to those described above since 2004 . . . ." Plaintiff goes on to describe a number of actions taken against him in 2011 by UL officials. He states that he filed an EEOC complaint in July 2011 and that he settled the complaint with UL.

Plaintiff identifies Claim 2 as "[a] Conspiracy between UofL and other Actors to engage in and cover-up a Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing in my 2011 Separation Agreement that was Racially Motivated." Plaintiff states under the sub-heading "2013": "Over the next year, acts that breached the voluntary settlement continued, plus

I knew the settlement 'lowballed' even though I didn't fully understand the valid legal reasons for it, focusing on the misconduct, not the contractual obligations, and on top of that, the harassment and surveillance didn't end." He continues, "So I went to the EEOC and filed another complaint in Indianapolis, then initiated legal action in Western Kentucky Federal District Court." He describes a previous case filed in this Court, *Warner v. University of Louisville*, Civil Action No. 3:12-cv-395-JGH. He makes a variety of complaints about the handling of that case and the evidence presented therein.

      Plaintiff next states under the heading "2014": "In April, 2014, the Jefferson County Attorney's Office, Child Support Division executed a child support order by Motriyo Isles-Warner against me." He complains that the amount he was ordered to pay assumed that he was still making the same salary at UL that he was making in 2009. He states that because of a delay in receiving mailings he was over $5,000 in arrears. According to the complaint, Plaintiff tried to contact the Jefferson County Attorney's Office about an adjustment to the amount to no avail. Plaintiff states that a garnishment was issued at two places of employment and that he was not rehired at either job. Plaintiff states, "In addition to the obvious harassment and misconduct in the execution and notification of the order, it should have been created through legal process outlined in the Uniform Family Support Act." He continues, "While Kentucky had the right to create the order, absent the perjured application, as well as having the right to enforce the order in Indiana, according to Federal law, the State procedures are clear that the local Kentucky office should have assisted in the modification." He maintains that the Child Support Office should have stopped the execution of the order pending an investigation and adjustment.

Plaintiff describes Claim 3 as "A Racially Motivated Section 1983 Conspiracy Covering Up the Use of an Illegal Legal Strategy Relative to the Crimes in Counts 1, 2." In support of this claim, Plaintiff states as follows:

> The June 17, 2016 Executive Order executed by Governor Bevin to eliminate the entire existing University of Louisville Board of Trustees, had a subtext that wasn't part of the broader discussion. Bevin is obstructing the UofL Board of Trustees from ending President Ramsey's strategy of hiding the announcement of UofL's misconduct related to my wrongful termination, as he tries to buy time in another case that is related, Connally v. UofL. Connally is the Human Resources Vice President that engaged in misconduct against me to cover up the negligence against me by Malinda Durbin, UofL's former sexual harassment officer that attempted and failed to have me arrested on January 11, 2011, where a judge said the evidence lacked probable cause for the crimes of harassing and stalking. Connally is suing the University for retaliation, using my story and the massive liability it carries, as leverage to try and coerce UofL into a settlement.
>
> . . .
>
> The decision to eliminate the existing board, and cover it up with a 3 person all African American temporary board is racially motivated as a further attempt to keep the media off the race angle or in the event that Connally goes public, Bevin won't look like he is complicit in knowing about the racially-motivated breaches of contract, harassment, and misconduct UofL's legal department has directed against me since 2004.

Plaintiff sets out a timeline of events which suggests his belief that recent actions taken by Governor Bevin in connection with the UL Board of Trustees are related to events occurring in Plaintiff's ongoing child support case in Kentucky and Indiana.

Plaintiff further states that he is "suing for violations" of 18 U.S.C. §§ 241 and 242 and "923 U.S.C. § 371." However, "923 U.S.C. § 371" is not a statute, and the Court presumes that Plaintiff intended to cite 18 U.S.C. § 371, the criminal statute governing conspiracy to commit an offense against or defraud the United States.

## II.

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. *See* 28 U.S.C. § 1915(e); *McGore*, 114 F.3d at 608-09. Upon review, the Court must dismiss a case at any time if it determines that an action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). This Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, the duty "does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id*. at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district

court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

### III.

#### A. Criminal provisions

Plaintiff states that he is suing Defendants under 18 U.S.C. §§ 241, 242, and 371. These are criminal statutes that do not create a private right of action. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003). Further, "[i]t is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965); *see also Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam). Therefore, Plaintiff's attempt to bring claims under these criminal statutes fails, and the claims must be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

#### B. 42 U.S.C. § 1983

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42 (1988).

##### 1. Claims against UL officials

Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275-80 (1985). Thus, in Kentucky, § 1983 actions are limited by the one-year statute of limitations

found in Ky. Rev. Stat. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action[,] and . . . a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 183 (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). While the statute of limitations is an affirmative defense, when the face of the complaint shows that an action is time-barred, the case may be dismissed summarily upon screening. *Jones v. Bock*, 549 U.S. at 215; *Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate.").

The bulk of Plaintiff's claims against UL officials concern allegations of a "retaliation system" and a conspiracy against him which led him to file an EEOC complaint in 2011. Therefore, it is clear that Plaintiff had knowledge of the alleged injuries when he filed his EEOC complaint in 2011. Plaintiff brought this action on June 24, 2016. All of Plaintiff's claims concerning actions taken by Defendants prior to June 24, 2015, are barred by the statute of limitations. Thus, all of Plaintiff's claims concerning actions by Defendants with respect to his separation from UL are barred by the statute of limitations and must be dismissed as frivolous.

Moreover, Plaintiff is barred from presenting any claims against Defendants concerning the events which led to the EEOC charge and settlement agreement by *res judicata*. Plaintiff filed suit in this Court against UL in 2012, alleging race discrimination and harassment by UL officials. *See Warner v. University of Louisville*, Civil Action No. 3:12-cv-395-JGH. The Court summarized the facts at issue in that case as follows:

> Plaintiff, Ede Warner, Jr. ("Warner"), is a former University professor who voluntarily resigned his employment as a condition of a confidential Settlement

> Agreement and General Release ("Settlement Agreement") entered into by Warner and the University on October 26, 2011. The Settlement Agreement was negotiated and entered into by the parties after the University initiated an investigation into allegations that Warner sexually harassed students and staff at the University and engaged in other professional misconduct. The University placed Warner on administrative leave when it began the investigation in January 2011. More than six months later, Warner filed a charge against the University with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was being racially discriminated against by his supervisor, Dean James Blaine Hudson ("Dean Hudson"). Upon conclusion of its investigation into his alleged misconduct, the University initiated formal termination proceedings against Warner.
>
> The parties subsequently agreed to participate in a mediation through the EEOC which ultimately resulted in the October 26, 2011 Settlement Agreement and Warner's voluntary resignation. Although its terms are confidential, the Settlement Agreement acknowledges Warner's EEOC charge and the University's Statement of Charges for dismissal and states that its purpose was to settle and release all claims relating to Warner's employment and to terminate Warner's employment with the University. Importantly, Warner expressly agreed in the Settlement Agreement to release, among other things, "any and all claims or charges that Warner has, or could have, filed against [the University] . . . under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. . . . ." Nevertheless, Warner filed his Complaint herein alleging the University retaliated against him for filing the July 2011 EEOC discrimination charge in violation of Title VII.

The case was dismissed upon UL's motion for summary judgment. The Court found as follows:

> In the Settlement Agreement, Warner expressly waived and released any and all legal claims against the University "arising from or relating to his employment with the University, the terms and conditions of that employment, his separation from employment and any other event, transaction, or communication between Warner and [the University]," specifically including but not limited to "any and all claims or charges that Warner has, or could have, filed against [the University] . . . under: . . .Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*." Thus, the Settlement Agreement is dispositive of Warner's Title VII claim. He cannot escape dismissal by supposing that the Court would simply decline to read the Settlement Agreement. *See Greenburg* [*v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)]; *Pribe* [v. Cessna Aircraft Co., No. 3:10 CV 1726, 2011 U.S. Dist. LEXIS 84512, at *6 (N.D. Ohio Aug. 2, 2011)]. The Court needs to go no further in discussing the other obvious defects in Warner's claims.
>
> The doctrine of *res judicata* prohibits a plaintiff from relitigating a claim that was

asserted or which could have been asserted in earlier litigation against the same defendants or

their privies. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981); *United States v. McMichael*, 525 F. App'x 388, 392 (6th Cir. 2013). Where jurisdiction in the prior litigation was based on a federal question, a federal court applies federal law in determining the preclusive effect of a prior federal judgment. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n.12 (1971) ("It has been held in non-diversity cases since *Erie R. Co. v. Tompkins*, that the federal courts will apply their own rule of *res judicata*.") (internal quotation marks and citation omitted)). The elements of *res judicata* under federal law are: "(1) there is a final decision on the merits of the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims." *Walker v. Gen. Tel. Co.*, 25 F. App'x 332, 336 (6th Cir. 2001) (per curiam).

With respect to Plaintiff's claims against UL officials, the first element is met because the first action was decided on the merits. The second is element is also satisfied because both this action and Civil Action No. 3:12-cv-395-JGH involve Plaintiff and UL. This action involves UL and its privies. The third and fourth elements are also satisfied because the allegations raised in this complaint were raised or could have been raised in the prior action. Finally, there is an identity of claims. Identity of claims means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). Both actions involve allegations of racial discrimination and racially motivated harassment by UL and its employees against Plaintiff.

In the present action, Plaintiff also raises a variety of complaints about the handling of the previous case and the evidence presented therein. It is clear that he is simply trying to re-litigate the same claims that he lost in his prior action. As such, these claims are barred by the doctrine

10

of *res judicata* and, therefore, must be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

Furthermore, to the extent that Plaintiff alleges a breach of his 2012 settlement agreement, he sets forth no facts showing how UL or any UL official breached the agreement, other than vague references to "harassment," "misconduct," and "surveillance." If Plaintiff is arguing that the Jefferson County Attorney's Office's execution of a child support order is evidence of a breach his settlement agreement with UL, such claim is nonsensical and must be dismissed as frivolous.

### *2. Conspiracy*

Plaintiff claims that all Defendants have engaged in a racially-motivated conspiracy against him since 2006. To the extent that any of his conspiracy claims are not barred by the statute of limitations or *res judicata* for the reasons discussed above, the claims still do not survive initial screening. Under § 1983 a civil conspiracy is "'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). In order to state a claim of conspiracy, Plaintiff must allege the elements that make up a conspiracy claim: that a single plan existed; that the alleged co-conspirators shared in the general conspiratorial objective to deprive Plaintiff of his constitutional or federal statutory rights; and that an overt act was committed in furtherance of the conspiracy that caused injury. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

A review of the complaint reveals that Plaintiff has failed to meet the pleading standard required to state a conspiracy claim. Plaintiff's complaint is completely devoid of factual matter that would allow the Court to draw a reasonable inference that Defendants engaged in a conspiracy to violate his constitutional rights. Plaintiff does not plead the "specifics" of any alleged conspiracy such as "when, where, or how the defendants conspired." *Perry v. Se. Boll Weevil Eradication Found., Inc.*, 154 F. App'x 467, 477 (6th Cir. 2005). Plaintiff makes only vague and conclusory allegations that he connects to no particular person and which have no underlying factual support. For example, he fails to allege any facts to support how or why Jefferson County Attorney O'Connell, Governor Bevin, or the Louisville branch of the EEOC conspired with UL officials to harm him. Nor does he allege facts to show what single conspiratorial objective Defendants might have had. He provides no factual support of a conspiracy other than the repeated recitation that one existed. "The 'web of inference[s] is too weak' on the alleged facts to permit a finding, 'absent sheer speculation,' that [Defendants] shared . . . [an] unlawful objective." *Bazzi v. City of Dearborn*, 658 F.3d at 603 (quoting *United States v. Sliwo*, 620 F.3d 630, 637 (6th Cir. 2010)). The complaint does not contain sufficient factual matter that, if accepted as true, states "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). Accordingly, Plaintiff's § 1983 conspiracy claims will be dismissed for failure to state a claim.

### C. Claims concerning child support case

Plaintiff also makes a number of claims challenging a child support order entered against him in state court and enforced by the Jefferson County Attorney's Office. Under the *Rooker-Feldman* doctrine, a federal district court may not hear an appeal of a case already litigated in state court. "A party raising a federal question must appeal a state court decision through the

state system and then directly to the Supreme Court of the United States." *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) (citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923)).  Therefore, Plaintiff's claims challenging the state court's child support order or the enforcement of that order are barred by the *Rooker-Feldman* doctrine.

For the foregoing reasons, the complaint will be dismissed by separate Order.

### D.  *Motion for expedited judgment*

Plaintiff also filed a motion for an expedited judgment.  It is not entirely clear whether the motion is directed to this Court or to the Sixth Circuit Court of Appeals.  To the extent the motion was directed to the Sixth Circuit, Plaintiff did not file a notice of appeal, and any appeal would have been interlocutory in any event.  Accordingly,

**IT IS ORDERED** that the motion for an expedited judgment is **DENIED as moot**.

Date: January 6, 2017

**David J. Hale, Judge**
**United States District Court**

cc:   Plaintiffs, *pro se*
      Defendants
4415.010